IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| Daisia Robinson-Thomas<br>10314 Strathmore Hall Street<br>Apt. 108<br>Rockville, Montgomery County, MD 20852,<br><br>*Plaintiff*,<br>   *v.*<br><br>Kavan Shaban<br>6111 Roseland Drive<br>Rockville, Montgomery County, MD 20852,<br><br>   *and*<br><br>CWL Services LLC<br>10411 Motor City Drive<br>Bethesda, Montgomery County, MD 20817,<br><br>*Serve*:  Roger C. Samek, Esquire<br>        15245 Shady Grove Road<br>        Suite 300-North Lobby<br>        Rockville, MD 20850,<br><br>   *and*<br><br>Cycloware, LLC<br>10411 Motor City Drive<br>Bethesda, Montgomery County, MD 20817,<br><br>*Serve*:  Roger C. Samek, Esquire<br>        15245 Shady Grove Road<br>        Suite 300-North Lobby<br>        Rockville, MD 20850,<br><br>   *Defendants*. | Civil Action No.: _____<br><br>JURY TRIAL REQUESTED |

## **COMPLAINT**

Plaintiff Daisia Robinson-Thomas (hereinafter, "Plaintiff" or "Ms. Robinson-Thomas")

brings this action against Mr. Kavan Shaban ("Defendant Shaban"), CWL Services LLC

("Defendant CWL"), and Cycloware, LLC ("Defendant Cycloware") (collectively, "the Defendants") to redress the Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*; the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*; the District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1003; the District of Columbia Wage Payment and Wage Collection Law, as amended, D.C. Code § 32-1301 *et seq.*; breach of contract; defamation; and abuse of legal process. In this suit, Ms. Robinson-Thomas seeks to recover:

- unpaid overtime wages denied to her by the Defendants' willful violations of the FLSA and Maryland, District of Columbia, and Florida wage laws;

- liquidated damages under the FLSA;

- treble damages under the Maryland Wage Payment and Collection Law;

- liquidated damages equal to three times the unpaid wages due under District of Columbia Law;

- unpaid wages denied to her by the Defendants' breach of contract;

- damages for defamation and abuse of legal process;

- pre- and post-judgment interest;

- attorney's fees;

- costs;

- equitable relief; and

- such other relief as the Court may deem just and proper.

## JURISDICTION, VENUE & PARTIES

1.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1331 (Federal Question) and § 1367 (Supplemental Jurisdiction).

2.      This Court has personal jurisdiction over Defendant Shaban because he resides and does business in the State of Maryland.

3.      This Court has personal jurisdiction over Defendant CWL because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

4.      This Court has personal jurisdiction over Defendant Cycloware because that defendant is a company organized under the laws of the State of Maryland and has substantial, continuous, and systematic contacts with the State of Maryland.

5.      In addition, this Court has personal jurisdiction over each of the Defendants because their unlawful actions that form the basis for this Complaint occurred in whole or in part in the State of Maryland.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which the Defendants reside. Also, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the Complaint occurred. Among other connections, Ms. Robinson-Thomas was employed by the Defendants in this judicial district from September 2018 through March 23, 2019. Also, during Ms. Robinson-Thomas' entire employment with the Defendants, her paycheck bore the address of Defendant CWL in this judicial district.

7.      Ms. Robinson-Thomas is an individual currently and at all times relevant to this Complaint, residing in the State of Maryland.

8.     Defendant Kavan Shaban is an individual residing in the State of Maryland. At all relevant times, Defendant Shaban had a significant ownership interest in each of the other Defendants, exercised day-to-day control of the operations of each of the other Defendants, and was involved in the supervision and payment of the employees of each of the other Defendants, in general, and Ms. Robinson-Thomas, in particular.

9.     Defendant CWL is a limited liability company organized under the laws of the State of Maryland.

10.    Defendant Cycloware is a limited liability company organized under the laws of the State of Maryland. At the time of this filing, Defendant Cycloware is not in good standing in the State of Maryland.

11.    Defendants CWL and Cycloware are operated together by Defendant Shaban without observing corporate formalities. For example, Ms. Robinson-Thomas, as the nanny for Defendant Shaban's children, was paid by checks drawn on the account of Defendant CWL and bearing the same street address as Defendant Cycloware, and she was provided with a car leased by Defendant Cycloware. Similarly, Defendant Shaban directed employees of Defendant Cycloware who were developing software for another entity controlled by Defendant Shaban (Persona Doctors) to work out of his personal residence.

## FACTS

12.    By letter dated January 23, 2018, Defendant Shaban offered Ms. Robinson-Thomas the position of "Nanny" for his two minor sons, then aged seven and nearly five, respectively. The offer letter stated, in part:

> The position will pay $25 per hour of actual work. The first 90 days are a probationary period. After you have started in the position I will follow up with a detailed schedule, work duties and a contract.

13.     Subsequently, Defendant Shaban and Ms. Robinson-Thomas entered into a "Caregiver Employment Agreement." That agreement states that it was "made on January 3, 2018"; however, that date is a clerical error. Defendant Shaban signed the "Caregiver Employment Agreement" on March 14, 2018, and Ms. Robinson-Thomas signed it on March 19, 2018.

14.     The Caregiver Employment Agreement defines Kavan Shaban as "Employer" and Daisia Robinson as "Employee." Daisia Robinson is the same person as Plaintiff.

15.     The terms of the Caregiver Employment Agreement included the following (all bold, underlining and italics as in original):

1. Employee shall start employment on **<u>January 25, 2018</u>**. . . .
3. Location of Employment:
   -- **2935 49th Street, NW, Washington, DC 20016**
   -- **6111 Roseland Drive, Rockville, MD 20852**
   -- **17885 Collins Ave, #4405, North Miami Beach, FL 33160**
4. Employer Contact:
   -- **Kavan J. Shaban**
   -- **ks@cwl-service.com**
   -- **703-405-5338**
5. 2 children . . . .
6. Employee will **<u>live out</u>**

**Work Schedule**
Employee shall work the following schedule when *the Employer has custody of any of his children*:

- On School days or days there is camp, Employee will work from at least **<u>6am to 9am</u>** and **<u>2pm to 9pm</u>**.
- On Non-school days (weekends, holidays, etc.), Employee will work from **<u>9am to 9pm</u>**.

**Wages**
The Employer shall pay the Employee the following wages:

1. Regular rate of pay is **<u>$25.00</u>** per hour.
2. Overtime Rate is **<u>$37.50</u>** per hour and is calculated as any

hours over 80 per 2-week schedule.

3. Employee is responsible for monitoring their [sic] overtime hours and reporting them to the Employer no later than 7 days after the close of the last 2-week schedule.

4. Employer will pay a **$100.00** stipend per day for travel days, plus hourly pay for hours work [sic]

5. Employer commits to contract with Caregiver for an aggregate if [sic] 80 hours per 2-week schedule with preference for times the Employer has his children. However, any times not taken when children are Employer [sic] will not be made up with non-children time. . . .

7. Wages shall be paid on every other Friday or as set by written notice.

16.     Ms. Robinson-Thomas was employed at the D.C. address listed in the Caregiver Employment Agreement from January through early September 2018. Ms. Robinson-Thomas was employed at the Maryland address listed in the Caregiver Employment Agreement from early September 2018 through March 23, 2019. Throughout her employment, Ms. Robinson-Thomas traveled occasionally to Florida with Defendant Shaban's family, but her primary place of employment remained in D.C. or Maryland, respectively.

17.     Ms. Robinson-Thomas did not "live in" at the D.C. or Maryland "Location[s] of Employment" listed in the Caregiver Employment Agreement.

18.     During Ms. Robinson-Thomas' tenure with the Defendants, she often worked more than 40 hours in a workweek and sometimes more than 90 hours in a workweek. The Defendants never paid Ms. Robinson-Thomas an overtime premium as required by law and by the Caregiver Employment Agreement.

19.     On some occasions, Ms. Robinson-Thomas was given fewer than 40 hours of work in a workweek such that, in six instances, Defendants did not give Ms. Robinson-Thomas the "80 hours per 2-week schedule" promised by the Caregiver Employment Agreement.

20.     Ms. Robinson-Thomas' position with the Defendants was as a nanny for Defendant Shaban's two small children. She did not have a primary duty that was management of the enterprise in which she was employed or of a customarily recognized department or subdivision thereof.

21.     Ms. Robinson-Thomas' position with the Defendants did not require her to customarily and regularly direct the work of two or more other employees.

22.     Ms. Robinson-Thomas' position with the Defendants did not provide her with the authority to hire or fire other employees.

23.     Ms. Robinson-Thomas' position with the Defendants did not have a primary duty that was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

24.     Ms. Robinson-Thomas' position with the Defendants did not have a primary duty that included the exercise of discretion and independent judgment with respect to matters of significance.

25.     During Ms. Robinson-Thomas' employment by the Defendants, she was not paid on a "salary basis" within the meaning of 29 C.F.R. Part 541. Specifically, Ms. Robinson-Thomas did not regularly receive each pay period on a weekly, or less frequent basis, a predetermined amount greater than $455 per week constituting all or part of her compensation, which amount was not subject to reduction because of variations in the quality or quantity of the work performed. Instead, Ms. Robinson-Thomas was paid on an hourly basis, and the Defendants did not consistently observe regular paydays.

26.     Specifically, during calendar year 2018, Ms. Robinson-Thomas was paid weekly on regular paydays. Beginning in January 2019, however, she was not paid on regular paydays. Instead, pay periods ranged from as few as 13 days to as many as 18 days.

27.     During her employment, Ms. Robinson-Thomas' paychecks identified "CWL Services LLC" -- *i.e.,* Defendant CWL -- as the "Employer."

28.     During her employment as nanny to Defendant Shaban's children, Ms. Robinson-Thomas was given use of a car for work purposes that was leased in the name of Defendant Cycloware.

29.     Also, during her employment as nanny to Defendant Shaban's children, Ms. Robinson-Thomas was given an email address on the domain of Defendant Cycloware.

30.     When Ms. Robinson-Thomas resigned her position as nanny to Defendant Shaban's children due to the hostile work environment described below, she received an email from Defendant Shaban's brother, Shawn Shaban, who worked for Defendant CWL, telling her:

> We will need to arrange for an exit interview on Friday at the office in Bethesda to return company property and receive your final paycheck. Jason and Vasili will do the exit.

"Vasili" referred to Vasilios Tombros, also an employee of Defendant CWL. "Jason" referred to Jason Herman, Vice President of Operations for Persona Doctors, another entity controlled by Defendant Shaban.

31.     Throughout her employment, Ms. Robinson-Thomas was subjected to a racially and sexually hostile working environment caused by Defendant Shaban. Defendant Shaban frequently used the word "Nigga" in his daily conversations and made inappropriate racist comments such as, "Black People are f***ing lazy," and "Black people suck at everything except for sports," or words to that effect. Some of these comments were made in front of one or

more of Defendant Shaban's minor children, for whom Ms. Robinson-Thomas was employed to be Nanny or Caregiver.

32.    Ms. Robinson-Thomas is African-American.

33.    Defendant Shaban also made sexist comments, such as commenting on Ms. Robinson-Thomas' body-type, and telling her, among other inappropriate comments, "If you ever get fat, I'll fire you." Additionally, he showed nude pictures to some of his employees while they worked.

34.    On March 23, 2019, Ms. Robinson-Thomas resigned from her position due to the ongoing hostile work environment.

35.    On November 27, 2019, Ms. Robinson-Thomas filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") based on the hostile work environment described above. That Charge was assigned the case number 531-2019-03631 and is currently being investigated by the EEOC.

36.    On at least two occasions, Ms. Robinson-Thomas had to purchase airline tickets for herself at her own expense even though the travel was in connection with Defendant Shaban's and his children's travels.

## COUNT I
### (Fair Labor Standards Act—against all Defendants)

37.    Plaintiff incorporates by reference paragraphs 1 through 36 above as if stated fully herein.

38.    At all relevant times, Defendant CWL was Ms. Robinson-Thomas' "employer" within the meaning of the FLSA.

39.    At all relevant times, Defendant CWL was an enterprise engaged in commerce or in the production of goods for commerce.

40.     At all relevant times, Defendant Cycloware was Ms. Robinson-Thomas' "employer" within the meaning of the FLSA.

41.     At all relevant times, Defendant Cycloware was an enterprise engaged in commerce or in the production of goods for commerce.

42.     At all relevant times, Defendant Shaban was Ms. Robinson-Thomas' "employer" within the meaning of the FLSA.

43.     At all relevant times, Defendant Shaban, through Defendant CWL and/or Defendant Cycloware, was an enterprise engaged in commerce or in the production of goods for commerce.

44.     At all relevant times, Defendant Shaban was a person acting directly or indirectly in the interest of an employer (Defendant CWL and/or Defendant Cycloware) in relation to an employee (Ms. Robinson-Thomas).

45.     At all relevant times, two or more of the Defendants were joint employers of Ms. Robinson-Thomas within the meaning of the FLSA.

46.     At all relevant times, Ms. Robinson-Thomas was an "employee" within the meaning of the FLSA.

47.     At all relevant times, Ms. Robinson-Thomas was a non-exempt employee for purposes of sections 6 and 7 of the FLSA (29 U.S.C. §§ 206, 207) and 29 C.F.R. Part 541.

48.     As a non-exempt employee, Ms. Robinson-Thomas was entitled to be paid not less than one and one-half times the regular rate at which she was employed for every hour worked in excess of 40 hours in a workweek.

49.     Ms. Robinson-Thomas' contract acknowledged that she was entitled to overtime pay at the rate of $37.50 per hour worked, which is one and one-half times the regular rate at which she was employed, *i.e.*, $25 per hour worked.

50.     During Ms. Robinson-Thomas' tenure with the Defendants, she often worked more than 40 hours in a workweek and sometimes more than 90 hours in a workweek.

51.     The Defendants paid Ms. Robinson-Thomas straight time for her overtime work, thus demonstrating that they were aware of the hours she worked, but they did not pay her the overtime premium to which she was entitled for her overtime work.

52.     Pursuant to section 16 of the FLSA (29 U.S.C. § 216), Ms. Robinson-Thomas is entitled to receive $9,156.05 in unpaid overtime premiums for calendar year 2018.

53.     In addition, pursuant to section 16 of the FLSA (29 U.S.C. § 216), Ms. Robinson-Thomas is entitled to receive approximately $2,300 in unpaid overtime premiums for calendar year 2019. The exact amount due can be determined only after discovery of records of hours work and payroll records in the sole possession of one or more of the Defendants.

54.     Also, pursuant to section 16 of the FLSA (29 U.S.C. § 216), Ms. Robinson-Thomas is entitled to receive an additional amount equal to the overtime wages due as liquidated damages.

55.     Also, pursuant to section 16 of the FLSA (29 U.S.C. § 216), Ms. Robinson-Thomas is entitled to a reasonable attorney's fee to be paid by the defendant, and costs of this action.

## <u>COUNT II</u>
### (Maryland Wage and Hour Law—against all Defendants)

56.     Plaintiff incorporates by reference paragraphs 1 through 36 above as if stated fully herein.

57.     At all relevant times from early September 2018 through March 23, 2019, Defendant CWL was Ms. Robinson-Thomas' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

58.     At all relevant times from early September 2018 through March 23, 2019, Defendant Cycloware was Ms. Robinson-Thomas' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

59.     At all relevant times from early September 2018 through March 23, 2019, Defendant Shaban was Ms. Robinson-Thomas' "employer" within the meaning of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415.

60.     At all relevant times from early September 2018 through March 23, 2019, two or more of the Defendants were joint employers of Ms. Robinson-Thomas for purposes of the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427.

61.     At all relevant times from early September 2018 through March 23, 2019, Ms. Robinson-Thomas was an "employee" covered by the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427.

62.     Under the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415, Ms. Robinson-Thomas was entitled to be paid not less than one and one-half times the usual hourly wage, computed in accordance with § 3-420, for every hour worked in excess of 40 hours in a workweek.

63.     During Ms. Robinson-Thomas' tenure with the Defendants, she often worked more than 40 hours in a workweek and sometimes more than 90 hours in a workweek.

64.     The Defendants paid Ms. Robinson-Thomas straight time for her overtime work, thus demonstrating that they were aware of the hours she worked, but they did not pay her the overtime premium to which she was entitled for her overtime work.

65.     Pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-415 and § 3-427, Ms. Robinson-Thomas is entitled to receive approximately $5,950 in unpaid overtime wages for the period from early September 2018 through March 23, 2019, when she was employed in Maryland. The exact amount due can be determined only after discovery of records of hours work and payroll records in the sole possession of one or more of the Defendants.

66.     Also, pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-427, Ms. Robinson-Thomas is entitled to receive an additional equal amount as liquidated damages.

67.     Also, pursuant to the Maryland Wage and Hour Law, MD Code, Labor and Employment § 3-401 *et seq.*, including § 3-427, Ms. Robinson-Thomas is entitled to counsel fees and other costs.

## <u>COUNT III</u>
### (Maryland Wage Payment and Collection Law—against all Defendants)

68.     Plaintiff incorporates by reference paragraphs 1 through 67 above as if stated fully herein.

69.     At all relevant times from early September 2018 through March 23, 2019, the Defendants, individually and/or jointly, were Ms. Robinson-Thomas' "employer" within the meaning of the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

70.     At all relevant times from early September 2018 through March 23, 2019, Ms. Robinson-Thomas was an "employee" covered by the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502.

71.     Under the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502, the Defendants, individually and/or jointly, were required to establish regular pay periods for Ms. Robinson-Thomas.

72.     The Defendants did not consistently establish regular pay periods for Ms. Robinson-Thomas.

73.     Under the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-502, if the regular payday of an employee (Ms. Robinson-Thomas) fell on a non-workday, the employer (the Defendants, jointly or separately) was required to pay the employee on the preceding workday.

74.     The Defendants did not pay Ms. Robinson-Thomas on the preceding workday when the regular payday fell on a non-workday.

75.     The Defendants did not give Ms. Robinson-Thomas, at the time of hiring in Maryland, notice of the regular paydays that the employer set as required by the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-504.

76.     More than two weeks have elapsed from the date on which the Defendants were required to have paid Ms. Robinson-Thomas the overtime wages due her under the Fair Labor Standards Act (Count I, above) and/or the Maryland Wage and Hour Law (Count II, above).

77.     Pursuant to the Maryland Wage Payment and Collection Law, MD Code, Labor and Employment § 3-501 *et seq.*, including § 3-507.2, Ms. Robinson-Thomas is entitled to an

amount not exceeding three times the unpaid overtime wages, and reasonable counsel fees and other costs.

## COUNT IV
### (D.C. Code § 32-1003—against all Defendants)

78.     Plaintiff incorporates by reference paragraphs 1 through 36 above as if stated fully herein.

79.     At all relevant times from January 23, 2018 through early September 2018, Defendant CWL was Ms. Robinson-Thomas' "employer" within the meaning of D.C. Code 32-1002 *et seq.*

80.     At all relevant times from January 23, 2018 through early September 2018, Defendant Cycloware was Ms. Robinson-Thomas' "employer" within the meaning of D.C. Code 32-1002 *et seq.*

81.     At all relevant times from January 23, 2018 through early September 2018, Defendant Shaban was Ms. Robinson-Thomas' "employer" within the meaning of D.C. Code 32-1002 *et seq.*

82.     At all relevant times from January 23, 2018 through early September 2018, two or more of the Defendants were joint employers of Ms. Robinson-Thomas for purposes of D.C. Code § 32-1002, D.C. Code § 32-1003, and D.C. Code § 32-1012.

83.     At all relevant times from January 23, 2018 through early September 2018, Ms. Robinson-Thomas was an "employee" covered by D.C. Code 32-1002.

84.     Under D.C. Code 32-1003, Ms. Robinson-Thomas was entitled to be paid not less than one and one-half times the usual hourly wage, computed in accordance with § 32-1003, for every hour worked in excess of 40 hours in a workweek.

85.     During Ms. Robinson-Thomas' tenure with the Defendants, she often worked more than 40 hours in a workweek and sometimes more than 90 hours in a workweek.

86.     The Defendants paid Ms. Robinson-Thomas straight time for her overtime work, thus demonstrating that they were aware of the hours she worked, but they did not pay her the overtime premium to which she was entitled for her overtime work.

87.     Pursuant to D.C. Code 32-1003 and D.C. Code 32-1012, Ms. Robinson-Thomas is entitled to receive approximately $5,509.54 in unpaid overtime wages for the period from January 23, 2018 through early September 2018, when she was employed in the District of Columbia.

88.     Also, pursuant to D.C. Code 32-1012, Ms. Robinson-Thomas is entitled to receive an additional equal amount as liquidated damages equal to treble the amount of unpaid wages.

## COUNT V
### (D.C. Code § 32-1302—against all Defendants)

89.     Plaintiff incorporates by reference paragraphs 1 through 36 and 78 through 88 above as if stated fully herein.

90.     At all relevant times from January 23, 2018 through early September 2018, the Defendants, individually and/or jointly, were Ms. Robinson-Thomas' "employer" within the meaning of D.C. Code 32-1301.

91.     At all relevant times from January 23, 2018 through early September 2018, Ms. Robinson-Thomas was an "employee" covered by D.C. Code 32-1301.

92.     Under D.C. Code 32-1302, the Defendants, individually and/or jointly, were required to establish regular pay periods for Ms. Robinson-Thomas.

93.     The Defendants did not establish regular pay periods for Ms. Robinson-Thomas, in that they did not pay her overtime on a regular schedule.

94.     Under D.C. Code 32-1302, an employer shall pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month.

95.     The Defendants did not pay Ms. Robinson-Thomas all wages earned on designated paydays or at least twice a month.

96.     More than two weeks have elapsed from the date on which the Defendants were required to have paid Ms. Robinson-Thomas the overtime wages due her under the Fair Labor Standards Act (Count I, above) and/or District of Columbia law (Count IV, above).

97.     Pursuant to D.C. Code 32-1308, Ms. Robinson-Thomas is entitled to an amount not exceeding three times the unpaid overtime wages, reasonable counsel fees and other costs, and any wages unlawfully withheld.

## COUNT VI
### (Breach of Contract)

98.     Plaintiff incorporates by reference paragraphs 1 through 36 above as if stated fully herein.

99.     In the Caregiver Employment Agreement, "Employer commit[ted] to contract with Caregiver for an aggregate if [sic] 80 hours per 2-week schedule."

100.    In the two-week periods ending March 6, 2018; April 3, 2018; June 26, 2018; July 10, 2018; and August 21, 2018, and also in the 18-day period ending January 10, 2019, the Defendants did not provide Ms. Robinson-Thomas with 80 hours of work and did not pay Ms. Robinson-Thomas for 80 hours.

101.    Not paying Ms. Robinson-Thomas "for an aggregate [of] 80 hours per 2-week schedule" was a breach of the Caregiver Employment Agreement.

102.     Not paying Ms. Robinson-Thomas overtime at the rate of $37.50 per hour also was a breach of the Caregiver Employment Agreement.

103.     Ms. Robinson-Thomas was damaged by the Defendants' breach of the Caregiver Employment Agreement.

104.     Ms. Robinson-Thomas is entitled to an additional $2,998.50 in wages as damages for the Defendants' failure to pay "for an aggregate [of] 80 hours per 2-week schedule."

105.     Ms. Robinson-Thomas also is entitled to approximately $11,500 in additional wages as damages for the Defendants' failure to pay her overtime in accordance with the Caregiver Employment Agreement.

106.     Requiring Ms. Robinson-Thomas to purchase her own airline tickets also was a breach of contract and Ms. Robinson-Thomas is entitled to be reimbursed for those tickets.

## COUNT VII
### (Defamation—against Defendant Shaban)

107.     Plaintiff incorporates by reference paragraphs 1 through 36 above as if stated fully herein.

108.     On or about May 27, 2019, approximately two months after Ms. Robinson-Thomas' resignation due to the hostile work environment, Defendant Shaban filed two Petitions for Peace Order in the District Court of Maryland for Montgomery County against Ms. Robinson-Thomas, alleging that Ms. Robinson-Thomas had improperly contacted Defendant Shaban's children, her former charges, and their mother, and purporting to seek protection against such contact.

109.     Defendant Shaban knew that Ms. Robinson-Thomas was not a threat to the children and his peace order filings were made in bad faith without substantial justification.

110.    The statements in the two Petitions for Peace Order that Ms. Robinson-Thomas had improperly contacted her former charges, Defendant Shaban's children, and their mother were false.

111.    The filing of two Petitions for Peace Order against Ms. Robinson-Thomas was a defamatory communication--*i.e.*, Defendant Shaban communicated false statements tending to expose Ms. Robinson-Thomas to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory.

112.    Defendant Shaban was at fault in communicating the statements.

113.    Ms. Robinson-Thomas suffered harm, including that she had to hire an attorney to represent her in the peace order proceedings, at a cost of $2,000.

## COUNT VIII
### (Abuse of Legal Process—against Defendant Shaban)

114.    Plaintiff incorporates by reference paragraphs 1 through 36 and paragraphs 107 through 113 above as if stated fully herein.

115.    Defendant Shaban willfully used process, *i.e.,* his two Petitions for Peace Order, for an illegal purpose in order to satisfy his ulterior motive of punishing and harassing Ms. Robinson-Thomas for resigning due to the hostile work environment he created.

116.    Defendant Shaban knew that Ms. Robinson-Thomas was not a threat to the children and his peace order filings were made in bad faith without substantial justification.

117.    Ms. Robinson-Thomas was damaged by Defendant Shaban's perverted use of process, including that she had to hire an attorney to represent her in the peace order proceedings, at a cost of $2,000.

118.    Also, or alternatively, Defendant Shaban engaged in the malicious misuse or misapplication of the Petition for Peace Order process to accomplish some purpose not

warranted, *i.e.,* to punish and harass Ms. Robinson-Thomas by trying to obtain a result not lawfully or properly attainable.

119.     After causing Ms. Robinson-Thomas to incur attorney fees to defend herself, Defendant Shaban did not show up for the hearing scheduled by the court, thus acknowledging that his filing lacked merit and was made for the sole purpose of punishing and harassing Ms. Robinson-Thomas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Daisia Robinson-Thomas respectfully requests that this Court enter judgment against the Defendants providing the following relief:

A.     Overtime wages in an amount to be determined at trial;

B.     Treble damages pursuant to the Maryland Code for unpaid wages during the time that Ms. Robinson-Thomas was employed in Maryland, and treble damages pursuant to the D.C. Code for unpaid wages during the time that Ms. Robinson-Thomas was employed in the District of Columbia;

C.     In the alternative, an amount equal to the unpaid overtime wages as liquidated damages pursuant to the Fair Labor Standards Act;

D.     In the alternative, liquidated damages pursuant to the Maryland Code for unpaid wages during the time that Ms. Robinson-Thomas was employed in Maryland, and liquidated damages pursuant to the D.C. Code for unpaid wages during the time that Ms. Robinson-Thomas was employed in the District of Columbia;

E.     Damages in an amount to be determined at trial for the Defendants' breaches of the Caregiver Employment Agreement;

F.     Compensatory damages in an amount to be determined at trial for Defendant Shaban's defamation and abuse of process;

G.      Punitive damages in an amount to be determined at trial for the Defendants'
defamation and abuse of process;

H.      An award of pre- and post-judgment interest, costs and attorney fees; and

I.      Such other relief as this Court shall deem just and proper.

### **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury in this action.

### **VERIFICATION**

I, Daisia Robinson-Thomas, declare verify under penalty of perjury that the foregoing is
true and correct.

Executed on January 24, 2020.

January 24, 2020

Respectfully submitted,

By: _____

Shlomo D. Katz (BAR NO. 22304)
BROWN RUDNICK LLP
601 13th Street, N.W., Suite 600
Washington, DC  20005
Telephone:  (202) 536-1753
Facsimile:  (617) 289-0775
SKatz@brownrudnick.com

Alex Fraser (BAR NO. 20607)
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 209-4829
Facsimile:  (212) 209-4801
AFraser@brownrudnick.com

*Attorneys for Plaintiff*